

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF FLORIDA

**FLORIDA PEDIATRIC SOCIETY/**
**THE FLORIDA CHAPTER OF THE**
**AMERICAN ACADEMY OF**
**PEDIATRICS; FLORIDA ACADEMY OF**
**OF PEDIATRIC DENTISTRY, INC.;**
**ASHLEY DOVE,** as the next friend
of Kaleb Kelley, a minor child;
**BLANCHE SPELL,** as the next friend of
Khalillah Spell, a minor child; and **EVA CARMONA,**
as the next friend of Vanessa and Jennifer Patino,
minor children; **AMY TORCHIN** as the next friend of
Theodore Torchin, minor child; **RITA GORENFLO**
and **LES GORENFLO** as the next friends of Thomas and
Nathanial Gorenflo, minor children.

Plaintiffs,

vs.

**ALAN LEVINE** in his official capacity as
Secretary of the Florida Agency for Health
Care Administration (AHCA); **LUCI D. HADI**
in her official capacity as Secretary of the Florida
Department of Children and Family Services; and
**M. RONY FRACOIS, M.D.,** in his official
capacity as Secretary of the Florida Department
of Health,

Defendants.

_____/

### <u>COMPLAINT – CLASS ACTION</u>

## I.   Introduction

1.      This civil rights action is brought to remedy the systematic and continuing violation of federal law by Florida state health officials.  Specifically, this action seeks to redress the failure of Florida state health officials to provide children in Florida who are enrolled in federally-funded medical assistance (commonly known as Medicaid) with essential medical and dental services as required by Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.* ("Title XIX").

2.      Title XIX mandates that all of these children be furnished Early and Periodic Screening, Diagnosis and Treatment Services ("EPSDT") – the primary, preventive, acute and specialty care and services which are necessary to their good health and development.

3.      This action is brought on behalf of the more than 1.6 million children who are enrolled in the Florida Title XIX and EPSDT services program (collectively referred to as "Medical Assistance"), by the Florida Pediatric Society/The Florida Chapter of the American Academy of Pediatrics ('FPS"), the Florida Academy of Pediatric Dentistry, Inc. ("FAPD"), and the named plaintiffs and their families.

4.      Plaintiffs seek declaratory and injunctive relief to end the violation of federal law taking place in Florida which denies our state's children the delivery of prompt, complete and continuing health care.

5.      The defendants are the Secretary of the Florida Agency for Health Care Administration ("AHCA"), the state governmental agency designated by the Governor to be Florida's single agency responsible for implementing Title XIX, the Secretary of the Florida Department of Children and Family Services, and the Secretary of the Florida Department of Health.

1

6.      The failure of the defendants to comply with federal law has resulted in, and, if left unremedied, will continue to result in, the needless infliction of pain, the endangerment of young lives, the preemption of learning, development, and growth, and the stunting of the children's life chances.

7.      Because of the defendants' violation of federal law, hundreds of thousands of eligible Florida children have not been furnished any preventive health care services.   According to the State of Florida's own statistics, in FFY 2004, for example, more than 500,000 Medicaid enrolled Florida children were furnished *no* preventative health care services at all.  Among these children:

- more than 30,000 infants (children under the age of 1) received *no* preventative medical services during the first year of their life,

- more than 152,000 toddlers (children between the ages of 1 and 5) received *no* preventative medical services; and

- more than 337,000 school age children (children between the ages of 6 and 18) received *no* preventative medical services.

8.      These statistics are not isolated examples but are demonstrative of the systematic failure of the defendants to comply with the mandates of federal Medicaid law.  Indeed, statistics provided to the federal government by Florida's Medicaid Agency show that for the years 1999 to 2004 *at least 44%* of the children enrolled in Florida's Medicaid program failed to receive even one of the health check ups that they were entitled to under federal law.  During that same time period *more than 75%* of Florida's enrolled children were furnished *no* dental care whatsoever, despite their entitlement to such care.

2

9.     To remedy Florida's systemic failure to comply with federal law, this action requests that the Court, *inter alia*:

a.     Require the defendants to conform to the mandates of Title XIX, its implementing regulations and guidelines, and provide the children of Florida with timely, complete and continuing health care and services;

b.     Require the defendants to ensure that payments to providers, including pediatricians, dentists, pediatric subspecialists, and other specialty care physicians, are sufficient to provide children receiving Medical Assistance access to care and services to the same extent that such care and services are available to other children in the same geographic area;

c.     Require defendants to bring children's health care and services to the children, including:  (i) informing children and their families of Florida's obligation to promptly furnish complete and continuing children's health care; (ii) utilizing cooperative arrangements with other child-intensive agencies in order to effectively achieve enrollment and easy re-enrollment of all eligible children; and (iii) providing scheduling assistance, transportation, outstations and case-management.

d.     Require defendants to assure that health maintenance organizations that participate in Florida's Medical Assistance program have the capacity, and fully and effectively use it, to deliver to all enrolled Florida children with them the timely, continuing and complete health care to which they are entitled.

## II.     Jurisdiction and Venue

10.     Plaintiffs bring this action to redress the deprivation of rights secured under the laws of the United States.

11.     The jurisdiction of the Court is invoked under 28 U.S.C. §§ 1331, 1343(a)(3) and 1343(a)(4), this being a civil action arising under 42 U.S.C. § 1983 for declaratory and injunctive relief for the deprivation of rights secured by Title XIX of the Social Security Act of the United States. 42 U.S.C. §§ 1396 *et seq.*

12.     Plaintiffs request declaratory and injunctive relief, as authorized by 28 U.S.C. §§ 2201 and 2202; 42 U.S.C. § 1983; 28 U.S.C. § 1331, and Fed.R.Civ.P. 57 and 65.

13.     Venue in this district is proper under 28 U.S.C. § 1391(b), in that a substantial part of the events and omissions giving rise to this claim have occurred and are occurring in this district.

## III.     The Parties

### Individual Plaintiffs

14.     Kaleb Kelley is the minor son of Ashley Dove, who appears in this matter as his next friend. Kaleb was born on December 25, 2003. Ashley Dove and her son reside in Lee County, Florida.

      a.     Kaleb is eligible to receive medical and dental care through Medicaid.

      b.     Kaleb has suffered from chronic and recurrent ear infections and has required periodic medical treatment, including treatment from Ear Nose and Throat ("ENT") specialists as a result.

      c.     Despite diligent efforts, his mother has been unable to obtain necessary medical treatment for Kaleb.

4

15.    Khalillah Spell is the sixteen year old minor daughter of Blanche Spell, who appears in this matter as Khalillah's next friend.  Khalillah and her mother live in Miami-Dade County, Florida.

    a.    Khalillah is eligible to receive medical and dental care through Medicaid.

    b.    Effective July 1, 2004, Atlantic Dental, Inc. ("ADI") was awarded a contract by the State of Florida Agency for Health Care Administration to provide dental benefits to more than 200,000 children who are Medicaid-eligible in Miami-Dade County, including Khalillah Spell.

    c.    After ADI had been awarded the contract, despite diligent efforts Ms. Spell has not obtained needed treatment for Khalillah and her other children through the ADI program.

16.    Vanessa and Jennifer Patino are the minor daughters of Eva Carmona, who appears in this matter as their next friend. Eva Carmona and her daughters reside in Miami-Dade County, Florida.

    a.    Vanessa and Jennifer are eligible to receive medical and dental care through Medicaid.

    b.    Effective July 1, 2004, ADI was awarded a contract by the State of Florida Agency for Health Care Administration to provide dental benefits to more than 200,000 children who are Medicaid-eligible in Miami-Dade County, including Vanessa and Jennifer.

    c.    Once the ADI regime took effect in July 2004, Eva Carmona sought to find a dentist that would accept her daughters as part of the ADI program.  Despite

5

diligent efforts, Eva Carmona, to this day, has been unable to find an ADI dentist to see her daughters, and Ms. Carmona has not obtained necessary dental treatment for her daughters.

17.     Theodore Torchin is the minor son of Amy Torchin, who appears in this matter as his next friend.   Theodore was born on October 28, 1999.   Amy Torchin and her son live in Coral Springs, Florida.

    a.    Theodore suffered severe brain damage as the result of an accident on or about December 19, 1999.

    b.    Theodore is covered by Medicaid as a result of a medically needy waiver.  Since his mother has private insurance, Medicaid functions as a second or excess insurer.

    c.    On or about August 21, 2005, Theodore's night-time nursing care was abruptly terminated and Ms. Torchin was subsequently informed that his nursing care allegedly did not meet the requirements for medical necessity.

    d.    Ms. Torchin protested the decision and on or about August 31, 2005, Ms. Torchin was able to get Theodore nursing care temporarily reinstated.

    e.    Theodore continues to receive private nursing care at night, but his mother does not know when or if the state will attempt to terminate his care again.

18.     Thomas and Nathaniel Gorenflo are the adopted, minor sons of Rita and Les Gorenflo, who appear in this matter as their next best friend.  Thomas was born on December 29, 1998, Nathaniel on February 10, 1998.  The Gorenflos live in Palm Beach Gardens.

    a.    Both children are eligible for Medicaid as a result of their adoption.

b.     In addition to other medical and developmental issues, Thomas has multiple related orthopedic problems.  Despite diligent efforts, the Gorenflos have not obtained necessary medical treatment for Thomas.

c.     In addition to other medical and developmental issues, Nathaniel suffers from chronic sinusitis and needs ENT treatment.  Despite diligent efforts, the Gorenflos have not obtained necessary medical treatment for Nathaniel.

**Organizational Plaintiffs**

19.     The Florida Pediatric Society/Florida Chapter of the American Academy of Pediatrics, ("FPS") is a non-profit professional organization of pediatricians and pediatric specialists.  FPS's purpose is to secure to all infants, children and adolescents in Florida full access to timely, continuous and complete health care and services, and further the goals of the American Academy of Pediatrics.

20.     FPS exists to advocate for infants, children and young adults and provide for their care; to collaborate to assure child health, and to assure that decision making affecting the health of children and their families is based upon the needs of those children and families.

21.     Since at least 1989, FPS has expended substantial organizational resources seeking to ensure that the defendants comply with federal law by providing timely, complete and continuous healthcare for all Medicaid-eligible children in Florida.  If Defendants had not failed to comply with federal law, and instead actually furnished Medical Assistance to all enrolled children, as required by Title XIX, 42 U.S.C. §§ 1396a(a)(8), 1396a(a)(10), 1396a(a)(30)(A),1396a(a)(43), the Florida Pediatric Society could and would devote these considerable resources to other purposes such as the advancement of child safety, public health

7

measures against substance abuse, as well as pediatric and public education campaigns to help eradicate the environmental causes of asthma, the social causes of child violence and obesity, and other conditions which prejudice the growth and learning and life-chances of children.

22.    In providing treatment to children receiving Medical Assistance, members of FPS are faced with rates that fail to cover costs and also with administrative burdens and impediments which are barriers to children receiving needed health care.  For example, because of defendants' actions and omissions, members of FPS are faced with Medicaid payment rates that are substantially below Medicare and commercial rates and which in many cases fail to even cover the member's costs.  Thus, the members of FPS  have suffered economic injury (and their ability to provide quality care has been undermined) as a result of defendants' violation of federal law.

23.    FPS sues (a) for itself as an organization that has suffered injury as a result of the defendants' acts and omissions, (b) on behalf its members (who have suffered injury as a result of the defendants' acts and omissions), and (c) on behalf of its members' patients – the Medicaid enrolled children of Florida harmed by defendants' actions and omissions.

24.    Likewise Plaintiff Florida Academy of Pediatric Dentistry, Inc. ("FAPD") is a non-profit organization.  Some members of FAPD provide dental care to children eligible for Medical Assistance.  The mission of FAPD is to improve and maintain the oral health of infants, children and adolescents, and persons with special needs.  FAPD is dedicated to promoting policies that increase access to oral health-care for low income children.  Thus, FAPD seeks to assure that children who are Medical Assistance beneficiaries receive periodic and comprehensive dental examinations and treatment.

8

25.     The acts and omissions of the defendants have imposed otherwise unnecessary expenditures of organizational resources on the FAPD. For example, the FAPD has spent significant organizational resources seeking to ensure the defendants comply with federal law. If the defendants had in fact complied with federal law, those resources could have been expended on other programs seeking to promote children's oral health.

26.     In addition, the unlawful acts of the defendants have resulted in payments to FAPD members which, in many cases, fail to even cover the member's costs. Thus, the members of the FAPD have suffered economic injury and their ability to provide quality care has been undermined.

27.     The FAPD sues (a) for itself as an organization that has suffered injury as a result of the defendants' acts and omissions, (b) on behalf its members (who have suffered injury as a result of the defendants' acts and omissions), and (c) on behalf of its members' patients – the Medicaid enrolled children of Florida harmed by defendants' actions and omissions.

**Defendants**

28.     Defendant Alan Levine is Secretary of the Florida Agency for Health Care Administration ("AHCA"). AHCA is the single state agency designated by the Governor and under Florida Statute § 408.034, and as required by Title XIX, 42 U.S.C. § 1396a(a)(5), to administer the Medical Assistance program in Florida. As Secretary of AHCA, Mr. Levine is the Agency's Chief Executive Officer responsible for implementing the Medical Assistance Program, for formulating, directing and monitoring its policies, rules and its actual performance and for insuring its compliance with state and federal law. Mr. Levine is sued in his official capacity.

29.     Defendant Luci D. Hadi is Secretary of the Florida Department of Children and Families ("DCF"). DCF is the state department responsible for administering Medicaid eligibility determinations and, with responsible AHCA officials, is responsible for assuring effective use of presumptive eligibility, continuous eligibility, joint applications and effective cross-enrollment among child serving programs. As Secretary of DCF, Ms. Hadi is responsible for assuring that Medicaid eligibility determinations are administered in compliance with state and federal law, including that they do not impede or defeat, but advance the prompt, complete and continuous delivery of Medical Assistance required by Title XIX to be furnished to all eligible children. Ms. Hadi is sued in her official capacity.

30.     Defendant M. Rony Francois, M.D. is the Secretary of the Florida Department of Health. The Florida Department of Health's stated mission is to protect and promote the health and safety of all people in Florida through the delivery of quality public health services and the promotion of health care standards. The Department of Health is organized in divisions and one of its divisions, the Division of Children's Medical Services, administers Florida's Medicaid program for children with special health care needs. As Secretary of the Department of Health, Dr. Francois is responsible for administering the department's programs for providing children's health care and services, including the Division of Children's Medical Services, in compliance with state and federal law. Dr. Francois is sued in his official capacity.

## IV.     Class Action Allegations

31.     The named individual plaintiffs bring this action on behalf of themselves and all other similarly situated pursuant to Fed.R.Civ.P. 23 (a) and 23 (b)(2). The plaintiffs' class consists of

10

children under the age of 21 who now, or in the future will, reside in Florida and who are, or will be, eligible under Title XIX of the Social Security Act for EPSDT.

32.    The requirements of Fed.R.Civ.P. 23(a) are met in that the class is so numerous that joining all members is impractical. Defendants' unduplicated count of children determined during FFY 2004 the number of children eligible and enrolled in Medical Assistance was over 1.6 million children.

33.    The named individual plaintiffs raise claims based on questions of law and fact that are common to the class. Plaintiffs and the class members rely on the defendants to ensure that they have access to and are provided health care services guaranteed to them by federal law. Plaintiffs and the class members are being deprived of these services because of the systematic violation of federal law by the defendants. Questions of fact common to the class include whether the defendants fail:

     a.     to ensure that payments to providers are sufficient so that enrolled children have access to and are provided health care as required by Title XIX;

     b.     to ensure that health care and services are delivered to children entitled to Medical Assistance benefits;

     c.     to develop and implement a coordinated system of care that provides the class members with medical, vision, hearing, dental and developmental screening, diagnosis and treatment at appropriate intervals that meet reasonable standards of medical care; and

     d.     to ensure that families of children enrolled in Medical Assistance are adequately informed of their children's right to receive EPSDT services and how to obtain

11

such services.

34.    Questions of law common to the entire class include whether defendants' acts and omissions deprive plaintiffs of EPSDT services in violation of the Medicaid Act, 42 U.S.C. §§ 1396a, 1396d(a), 1396d(r), and 1396u-2, and the regulations and guidelines promulgated thereunder.

35.    Certification under Rule 23(b)(2) is appropriate because the defendants have acted or refused to act on grounds generally applicable to the class as a whole, thereby making appropriate final injunctive relief on a class basis.  Specifically, plaintiffs request that this Court declare defendants by their actions and omissions to be in violation of Title XIX, 42 U.S.C. §§ 1396a, 1396d(a), 1396d(r), and 1396u-2 and to issue injunctive relief as follows:

    a.    Requiring defendants to furnish all Medicaid-eligible children the timely, complete, and continuing health care and services required by Title XIX;

    b.    Requiring defendants to ensure that payments to providers are sufficient to ensure that Medicaid eligible children have access to care and services at least to the same extent that such care and services are available to other children in the same geographic area, and to assure that such payments are consistent with quality of care;

    c.    Requiring defendants to design, implement, ensure and enforce eligibility-determination assignment and managed care arrangements which can and do deliver in timely and continuing fashion, the full array of children's health care services required to be delivered by Title XIX; and

    d.    Requiring defendants to bring children's health care to the children, including:

12

aggressively informing children and their families of Florida's obligation to furnish timely, complete and continuing children's health care; fully utilizing cooperative arrangements with other child-intensive agencies in order effectively to achieve enrollment and re-enrollment of all eligible children and in order to accomplish the actual delivery of necessary health care and services to all enrolled children; and providing scheduling assistance, outstations and case-management.

36.     The named plaintiffs will fairly and adequately protect the interests of the class. The named plaintiff organizations have the resources to prosecute this action on behalf of the proposed class. They are represented by attorneys employed by Boies, Schiller & Flexner LLP, the Public Interest Law Center of Philadelphia, and Miller, Keffer & Bullock PC. Counsel have experience in complex class action litigation involving health care and civil rights laws. Counsel have the resources, expertise, and experience to prosecute this action.

37.     Defendants' acts and omissions have affected and will affect the class generally, thereby making finial injunctive relief and declaratory relief with respect to the class as a whole appropriate.

## V.     The Law and Structure of Children's Health Care Under Title XIX of the Social Security Act

38.     Medical Assistance (often known as "Medicaid") is a joint and cooperative federal-state program for furnishing and financing health care and services. Title XIX was first enacted in 1965. Its children's health care provisions were first made express in 1967. Its 1989 and 1990 Amendments significantly expanded family incomes at which children are eligible and the health care and services, primary and specialty care alike, that must be furnished to all eligible children.

13

39.     Title XIX, the Medical Assistance title of the Social Security Act, was enacted "[f]or the purpose of enabling each state . . . to furnish (1) medical assistance on behalf of families with dependent children and . . . disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services, and (2) rehabilitation and other services to help such families and individuals attain or retain capability for independence or self-care." 42 U.S.C. § 1396.

40.     To enable the states to fulfill this purpose, and in exchange for acceptance of the obligations imposed by Title XIX, Title XIX provides:

> there is hereby authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes of this subchapter. The sums made available under this section shall be used for making payments to States which have submitted, and had approved by the Secretary, State plans for medical assistance.

42 U.S.C. § 1396.

41.     Although state participation in Medical Assistance is entirely voluntary, once a state chooses to participate, it must carry out the requirements of Title XIX and its regulations. Florida has elected to participate in Medical Assistance.

42.     The Centers for Medicare and Medicaid in the United States Department of Health and Human Services ("CMS") oversees the program for the Secretary.  Defendant Florida officials are responsible under Title XIX and state law for implementation of Florida's Medicaid program in accordance with the requirements imposed by Title XIX, its implementing regulations and policy directions.

43.     Under Title XIX, provision of children's health care is mandatory upon each participating state.  Title XIX expressly provides:

14

The term "medical assistance" means payment of part or all of the cost of the following care and services . . . early and periodic screening, diagnostic and treatment services (as defined in subsection (r) of this section) for individuals who are eligible . . . and under the age of 21.

42 U.S.C. § 1396d(a)(4)(B).

44.     Title XIX further provides that each participating state must make available "at least the care and services listed in paragraph [4(B)] of section 1396d(a) to all individuals who are [eligible]." 42 U.S.C. § 1396a(a)(10)(A).

45.     States that elect to participate in the Medical Assistance program are reimbursed by the CMS without any financial cap for 50% or more of their medical expenditures in exchange for compliance with the requirements of Title XIX.

46.     Since 1989, at 42 U.S.C. § 1396d(r), Title XIX has set forth expressly what items and services the mandatory "early and periodic screening, diagnostic and treatment services" must include; namely:

   a.     **Comprehensive screening examinations** "provided at intervals which meet reasonable standards of medical and dental practice, as determined by the State after consultation with recognized medical and dental organizations involved in child health care and, with respect to immunizations . . ., in accordance with the schedule referred to in Section 1396S(c)(2)(B)(u) of this title for pediatric vaccines" and "at such other intervals, indicated as medically necessary, to determine the existence of physical or mental illnesses or conditions and which shall at a minimum include (i) a comprehensive health and developmental history (including assessment of both physical and mental health development), (ii) a

15

comprehensive unclothed physical exam, (iii) appropriate immunizations . . . according to age and health history, (iv) laboratory tests (including lead blood level assessment according to age and health history), and (v) health education (including anticipatory guidance)."

b.  **Vision services** "provided at intervals which meet reasonable standards of medical practice as determined by the State after consultation with recognized medical organizations involved in child health care and otherwise as medically necessary to determine the existence of a suspected illness or condition; and which shall at a minimum include diagnosis and treatment for defects in vision, including eyeglasses."

c.  **Dental services** "provided at intervals which meet reasonable standards of dental practice as determined after consultation with recognized dental organizations involved in children's health care; and which shall at a minimum include relief of pain and infections, restoration of teeth, and maintenance of dental health."

d.  **Hearing services** at similar intervals determined in similar ways and "which shall at a minimum include diagnosis and treatment for defects in hearing, including hearing aids."

e.  **All such other health care**, diagnostic services, treatment, and other measures described in § 1396a(a) **necessary to correct or ameliorate defects and physical and mental illnesses and conditions**, "whether or not such services are covered [otherwise] under the State plan."

16

47.     Title XIX has long required that a participating state's "payments for care and services" be "consistent with . . . quality." 42 U.S.C. § 1396a(a)(30)(A). In 1989, as part of its expansion of income eligibility criteria for children's health care and of the preventive care and services required to be delivered to children Congress codified a long-standing regulation into Title XIX, requiring also that each participating state:

> provide such methods and procedures relating to the utilization of, and payment for, care and services available under the plan . . . as may be necessary . . . to assure that payments . . . are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area.

42 U.S.C. § 1396a(a)(30)(A).

48.     The criteria for sufficiency of payments necessary to assure equal access has been interpreted by courts to mean that reimbursement rates are at least 90% of payments in commercial and other public (*i.e.* Medicare) coverage, that they enlist at least two-thirds of each specialty's practitioners in full participation in Medicaid, and that they actually achieve delivery of the required care and services. Currently, Florida's Medicaid reimbursement rates are far below this standard.

49.     In short, the obligation imposed upon responsible state officials by Title XIX of the Social Security Act is, as stated in one of the earliest of the long and consistent line of federal court cases enforcing Title XIX, to wit:

> The mandatory obligation upon each participating state to aggressively notify, seek out and screen persons under 21 in order to detect health problems and to pursue those problems with the needed treatment is made unambiguously clear by the 1967 act and by the interpretive regulations and guidelines.
>
> [A] somewhat casual approach to EPSDT hardly conforms to the aggressive

17

search for early detection of child health problems envisaged by Congress. It is difficult enough to activate the average affluent adult to seek medical assistance until he is virtually laid low. It is utterly beyond belief to expect that children of needy parents will volunteer themselves or that their parents will voluntarily deliver them to the providers of health services for early medical screening and diagnosis. By the time [a] . . . child is brought for treatment it may too often be on a stretcher. This is hardly the goal of "early and periodic screening and diagnosis." *EPSDT programs must be brought to the recipients; the recipients will not ordinarily go to the programs until it is too late to accomplish the congressional purpose.*

*Stanton v. Bond*, 504 F.2d 1246, 1250-51 (7th Cir. 1974), *cert. denied*, 420 U.S. 984 (1975) (emphasis added).

50.     In 1989, Congress linked children's health care eligibility directly and simply to a child's age and his or her family's income. In doing so, Congress intended to, and did, expand the numbers of poor, near-poor and middle income children who are entitled to health care, particularly including those in working families whose jobs pay only low wages, right up into, for large families, median family income.

51.     The 1989 Amendments required states to provide health care to children from birth through age five in families with income equal to or less than 133% of the poverty level, and to children born after September 30, 1983 (who are age 6 through age 18), 100% of the poverty level, and to age 21, the cash assistance standards. The 1989 Amendments authorized eligibility standards to 185% of the poverty level for infancy (birth to age one), and at all ages allowed the States, by waiver, to choose still higher eligibility standards, while maintaining the same proportion of federal financial participation.

18

## VI.    Defendants' Violations of Federal Law

52.    Florida has chosen to participate in Medical Assistance.  Like all states which have chosen to participate, Florida is reimbursed by the Federal Centers for Medicaid and Medicare Services—without any financial cap—for the largest portion of its expenditures for health care and services on the condition that state officials carry out the requirements of Title XIX.

53.    In Florida, the federal government currently pays 58.9% of all expenditures for health care and services furnished under Title XIX, including the costs of state administration; Florida pays the remaining 41.1%.

54.    Nearly one-third of all of Florida's children are eligible for Title XIX Medicaid.  In FFY 2004, some 1.6 million Florida children, aged birth to 21, were eligible and enrolled and an estimated additional 200,000 children were eligible but still not enrolled by defendants.  In 2000, some 43% of births, in Florida were Medicaid covered.

55.    Although in FFY 2003-04 children were more than half (53.3%) of the persons enrolled in Medical Assistance, this health care and services constituted less than 18% of Florida's Medical Assistance expenditures.  Preventive health care for children is the most economical expenditure providing the greatest public health benefit for each dollar spent.

56.    Florida administers a set of four programs to provide health care and services to children. Together the four are called "KidCare".  The four programs are:

    a.    Medicaid, funded and operating under Title XIX of the Social Security Act;

    b.    Children's Medical Services ("CMS") addressed to children with complex healthcare needs, almost entirely funded under Title XIX and operating thereunder;

c.  Healthy Kids, funded and operating under Title XXI (the State Children's Health Insurance Program, "SCHIP") of the Social Security Act, 42 U.S.C. § 1397aa *et seq* a federal-state block grant, non-entitlement program for children whose family incomes range *above* Medicaid eligibility income limits to 200% of the federal poverty level;

d.  Medikids, also funded and operating under Title XXI, for children ages 1 through 5 whose family income is between 133% and 200% of the federal poverty level.

57.  This action concerns Medicaid and Children's Medical Services but not Healthy Kids or Medikids, except insofar as federal law creates obligations upon the latter two programs, for example, to assure the enrollment in Medicaid of any children identified in the operation of the two programs including their application processes as being eligible for Medicaid, because of a decline in family income or because a child is in foster care, adoption assistance, or on social security disability assistance.

58.  Florida has chosen to set children's family eligibility for Medical Assistance at 200% of the federal poverty level for infants from birth to age 1, 133% of the federal poverty level for children ages 2 through 5, 100% of the federal poverty level for ages 6 through 18, and for ages 19, 20 and 21 at 23% of the federal poverty level.

59.  In addition, children receiving Supplemental Security Income, 42 U.S.C. § 1382 (based upon disability); Adoption Assistance, 42 U.S.C. § 670; and Foster Care, 42 U.S.C. § 670, are, categorically, eligible for Title XIX children's health care.

60.  During the federal fiscal year ending September 30, 2004, an unduplicated count of more than 1.6 million Florida children were determined to be eligible for Title XIX children's health

20

care *and* were enrolled therein by defendants or their agents.  This was approximately 37% of Florida's children.

61.     In Florida, pursuant to § 1396d(r) and requirements of the EPSDT, and in partial accordance with the American Academy of Pediatrics' "Recommendations for Preventive Pediatric Health Care," six comprehensive medical screening examinations are required to be furnished in an infant's first year of life, beginning within one month after birth and at the second, fourth, sixth, ninth, and twelfth months; two in the second year; one yearly, at ages 2 through 5 years; and biannually, at ages 6 through 9 years, and annually at ages 10 through 20 years, with the option of an additional screening examination at ages 7 years and 9 years, if medically necessary, as follows:

a.     By one month; and

b.     At 2 months, 4 months, 6 months, 9 months, 12 months, 15 months, and 18 months; and,

c.     At 2 years, 3 years, 4 years and 5 years; and,

d.     At 6 years, 8 years, 10 years, 11 years, 12 years, 13 years, 14 years, 15 years, 16 years, 17 years, 18 years, 19 years and 20 years.

62.     In Florida, vision examinations and treatment are required during each EPSDT visit.

63.     In Florida, dental examinations, including preventive care, are required once every 6 months for children ages 3 and older, and hearing evaluations are required every 12 months.

64.     By any measure, as the figures cited above in paragraphs 7 and 8 demonstrate, Florida has systemically failed to provide this care to Florida's Medicaid enrolled children, and thus has violated the mandates of Title XIX.  Because of these violations, hundreds of thousands eligible

21

Florida children have not been furnished any preventive health care services.   According to the State of Florida's own statistics, in FFY 2004, for example, 554,749 Medicaid enrolled Florida children were furnished *no* preventative health care services at all.

65.    One of the primary reasons for this failure is the inadequate reimbursement rates paid by Florida to Medicaid providers. Indeed, a July 2001 United States General Accounting Office report entitled *Medicaid: Stronger Efforts Needed to Ensure Children's Access to Health Screening Services* found that "Higher Medicaid fees can attract new providers or motivate existing providers to see more patients." The report also provided that in 1995 after Florida increased in reimbursement for an EPSDT screen 116 percent (from $30.00 to $64.82), screening rates doubled – from 32 percent to 64 percent. That was Florida's last substantial increase in provider reimbursement and it occurred 10 years ago, despite substantial increases in provider costs during that same period.

66.    In 2004, the Florida State Department of Health conducted a Provider Access Survey of its 17 area and regional Children's Medical Services Offices covering all 67 Florida counties. The Survey inquired about access to pediatric primary specialty care services for Children's Medical Services of Florida ("CMS of Florida") patients, which include children eligible for Medicaid, many of whom have special health care needs.

67.    The survey drew a 100% response rate. The Department of Health, CMS of Florida survey found that during the period January, 2003 through December, 2003:

- Every CMS of Florida office reported that some CMS of Florida-enrolled private primary care practices were closed to new CMS of Florida patients during calendar year 2003.

- Low reimbursement rates and lack of capacity were the top two reasons cited for

22

the closure of primary care practices to new CMS of Florida patients, followed by the patients' health conditions being considered too complex for primary care practice and administrative burden/paperwork.

- Every CMS of Florida provider recruitment office attempted to recruit primary care practitioners to become providers during calendar year 2003. Almost three-fourths (72%) of the contacted private primary care providers declined to enroll as providers. Low reimbursement rates and lack of capacity were the main reasons cited for declining to participate.

- Consistent with other survey findings, access to primary care physician services for CMS patients is most difficult in rural counties.

68. With regard to pediatric specialty care, the Department of Health survey found:

- The most frequently reported pediatric specialties for which no access was reported were: dentistry, dermatology, neurological surgery, orthopedics, psychiatry, and urology.

- Among the pediatric specialties for which limited access or access only with a medical director's intervention was reported, dermatology and oral surgery were first, neurology was second and dentistry and orthodontics were third.

- When responses for no access or limited access were combined, the following pediatric specialties were most often cited: dentistry, dermatology, neurological surgery, neurology, orthodontics, orthopedics, and urology.

69. During 2003, CMS of Florida staff attempted to recruit pediatric specialists to the CMS of Florida network and, similarly to the primary care experience, a large number of those approached declined to participate. Low reimbursement was the number one reason, followed by lack of capacity and administrative burden/paperwork.

70. Thus, according to Florida's own studies, low reimbursement rates are a principal reason for low provider participation rates.

71. Contrary to their obligation under law, defendants have not and do not "provide", let alone "assure", that payments for children's health care and services are either "consistent with .

23

. . quality" or "sufficient to enlist enough providers so that care and services are available [to Medicaid-enrolled children] at least to the extent that they are available to children in the general population." 42 U.S.C. § 1396a(a)(30); 45 C.F.R. § 447.204.

72.     Defendants' payments for children's health care and services are inconsistent with the preventive purposes of Medicaid children's health care; they are inconsistent also with the timely low-cost delivery of preventive care and the avoidance of high cost chronic conditions and high cost crisis care, needlessly forcing children into very much higher cost hospital-based emergency rooms, into costly and sometimes extended inpatient hospital care, and inflicting extended and aggravated conditions upon children which if addressed preventively would have been sharply mitigated.

73.     Moreover, the administrative systems which defendants have put in place to manage Florida's Medicaid program frequently and unnecessarily impose barriers to, delay and often frustrate completely the provision of medical and dental care to children enrolled in Florida's Medicaid program in a number of different ways.  Highly typical of these barriers, delays and frustrations are the practices described below:

   a.     Without the consent of or notice to the child or its parents, a child is often reassigned by Florida's Medicaid program from one primary care provider to another.  The child and his parent only discover this when the child gets sick, needs prompt attention and in making or arriving for an appointment with the primary care provider, the provider discovers, upon checking Florida's computer system, that the child has been reassigned to a different provider.  This leaves the child and the primary care provider with the following dilemma: if the provider

24

treats the child's urgent need, the provider will receive no reimbursement; if the provider declines to treat the child, the family must make arrangements (usually after considerable delay) with the newly assigned provider who has never seen the child and doesn't know the history. This interrupts continuity of care and, thus, injures quality of care. Normally, it is a matter of at least weeks and sometimes a couple of months, for the child to be reassigned back to the original provider if the child's parent wishes to do so.

b.    Without knowledge of or notice to the child or its parents, the child's Medicaid eligibility is incorrectly and without justification terminated. Again if the child gets sick, and is taken to a provider, the provider risks getting no reimbursement for the service and/or can look forward to delays and difficulties in getting reimbursed which impose costs greater than the fee Medicaid may eventually pay when the error is corrected.

74.    The circumstances described in paragraphs (a) and (b) above occur frequently both to children enrolled in the Florida Medipass program and to children enrolled in Medicaid HMOs. The circumstances described in paragraph (a) occur most frequently when the child is enrolled in Medipass and is reassigned without notice or knowledge to an HMO whose panel of providers does not include the child's existing primary care provider. Representatives of plaintiff FPS have on numerous occasions brought the aforesaid situations to the attention of defendants or their predecessors in office, but to date no changes have been made that have effectively prevented the continuation of these problems. Defendants' failures to change their

25

administrative systems to eliminate these problems violates defendants' duties to plaintiffs under 42 U.S.C. § 1396a(a)(10)(A) and § 1396 a(a)(8).

75.     Defendants also fail to adequately monitor managed care organizations that provide services to Medicaid patients.  Specifically, under 42 U.S.C. § 1396a(a)(10)(A) and 42 U.S.C. § 1396a(a)(8), defendants must ensure the provision of care and services with reasonable promptness to plaintiff children.  Further, 42 U.S.C. § 1396u-2(a) and § 1396u-2(b)(5) require that when a Medicaid managed care organization is employed to provide care and services to children enrolled in the Medicaid program, the defendants must ensure that the Medicaid managed care organization:

      a.     offers an appropriate range of services and access to preventative and primary care services for the population to be enrolled in such service area, and

      b.     maintains a sufficient number, mix and geographic distribution of providers of service.

42 U.S.C. § 1396u-2(b)(5)(A) and (B).

76.     Defendants have failed to fulfill these requirements as many Florida Medicaid managed care organizations' panels of providers are significantly inadequate.  These inadequacies result frequently in unreasonably delaying and often in totally frustrating the provision of needed care to plaintiff children.  The inadequacy of the panels of Florida Medicaid managed care organizations is most pronounced for pediatric medical subspecialists and for dentists.  There are, however, a significant number of plaintiff children enrolled in Medicaid managed care organizations who encounter unreasonable delays in accessing primary medical care due to the inadequacy of the primary medical care provider panels of those organizations.

26

77.     A particularly egregious example of defendants' failure to adequately monitor the HMO's with which Florida has contracted involves the contract that Florida entered with a managed care organization named Atlantic Dental, Inc. ("ADI") to provide dental care to children enrolled in the Medicaid program in Miami-Dade County. When the contract went into effect, July 1, 2004, dental care for Medicaid children in Miami-Dade County was no longer available through Medipass, or any managed care organization other than ADI. This lack of alternatives deprived plaintiff class members residing in Dade County of the choice of managed care organizations to which they were and are entitled by 42 U.S.C. § 1396u-2(a)(3). After July 1, 2004, in addition to the named plaintiffs Khalillah Spell and Eva Carmona, numerous other Dade County children enrolled in Medicaid were unable to access treatment for dental problems because of the total inadequacy of ADI's panel of dentists and dental specialists. Dade County Medicaid children also experienced difficulty in promptly receiving dental screenings because of ADI's inadequate panels. The inadequacy of ADI's panels was largely a direct result of ADI's setting the rates at which it compensated panel members at levels so low as to provide powerful disincentives: (a) for providers to participate at all in ADI panels and (b) for ADI panel members to provide treatment and screenings to Medicaid children assigned to their practices.

78.     As detailed above, defendants have systematically failed to meet their obligations under federal law, and the plaintiffs have suffered and, in the absence of relief, will continue to suffer real cognizable and redressable injuries as a result.

27

## CLAIMS FOR RELIEF

### First Cause of Action
Action to Enforce Children's Rights to Medical Assistance

79.     Plaintiffs incorporate the allegations set forth in paragraphs 1 through 78, as though fully set forth herein.

80.     The Social Security Act, 42 U.S.C. § 1396a(a)(8) and (a)(10) as defined by 1396d(a) and d(r), provide that "medical assistance shall be furnished with reasonable promptness to all eligible individuals."

81.     "Medical Assistance" means regular check-ups at intervals determined by the state after consultation with medical and dental organizations involved in children's healthcare, which check-ups must include a comprehensive health and development history (including assessments of physical and mental health), a comprehensive unclothed physical examination, laboratory tests, including lead blood level assessment, age-appropriate immunizations according to the schedule of the Advisory Committee on Immunization Practices, "anticipatory guidance" for children and their caretakers as part of the basic child healthcare examination, and vision, dental, and hearing examinations.  42 U.S.C. § 1396d(a) and (r).

82.     "Medical Assistance" also means diagnoses, then treatment or other measures to correct or ameliorate Plaintiffs' defects and physical, dental and mental illnesses and conditions, whether or not such services are covered under Florida's Medical Assistance program for adults. 42 U.S.C. § 1396d(r).

28

83. In violation of 42 U.S.C. § 1396a(a)(8) and (a)(10), as defined by 42 U.S.C. § 1396d(a) and (r), defendants have refused or failed to provide the required medical assistance with reasonable promptness to all eligible individuals.

84. Defendants' violation of 42 U.S.C § 1396a(a)(8) and (a)(10), as defined by 42 U.S.C. § 1396d(a) and (r), has caused and will cause harm to individual Plaintiffs in that they have been, or will be, denied the required healthcare services. The unlawful deprivation of medically necessary care results in the needless infliction of pain, the endangerment of young lives, the disruption of learning, development and growth and the stunting of children's chances to achieve their full potential.

85. Defendants' violation of 42 U.S.C. § 1396a(a)(8) and (a)(10) has caused and will cause harm to organizational Plaintiffs in that they have incurred, or will incur, otherwise unnecessary expenditures of organizational resources.

86. Defendants' violation of 42 U.S.C. § 1396a(a)(8) and (a)(10) has caused and will cause harm to the members of the organizational Plaintiffs in that they have incurred, or will incur, economic damage.

87. Defendants' violation of 42 U.S.C. § 1396a(a)(8) and (a)(10) as defined by 42 U.S.C. § 1396d(a) and 1396d(r), provides a cause of action to Plaintiffs under 42 U.S.C- § 1983, inasmuch as Defendants, under color of state law, custom, or usage, have deprived, are depriving, and will continue to deprive Plaintiffs of their clearly established rights under 42 U.S.C. § 1396a(a)(8) and (a)(10), as defined by 42 U.S.C. § 1396d(a) and (r).

88. The harm to Plaintiffs is irreparable and Plaintiffs have no adequate remedy at law to prevent the continuing wrong and irreparable injury caused by defendants' acts or omissions.

29

**Second Cause of Action**
Action to Enforce Children's Rights To Access to
Healthcare Services Required by Title XIX

89. Plaintiffs incorporate the allegations set forth in paragraphs 1 through 78 as though fully set forth herein.

90. The Social Security Act imposes upon defendants a non-delegable duty to assure that payments to medical providers are consistent with quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area. 42 U.S.C. § 1396a(a)(30)(A).

91. Defendants have violated this duty by developing and establishing a Medical Assistance Program which does not pay providers high enough reimbursement fees to ensure that all eligible Florida children have access to the quality and quantity of care at least to the extent that such care and services are available to the general population in the geographic area.

92. Defendants' violation of 42 U.S.C. § 1396a(a)(30)(A) has caused and will cause harm to individual Plaintiffs in that they have been, or will be, denied the required healthcare services. The unlawful deprivation of medically necessary care results in the needless infliction of pain, the endangerment of young lives, the disruption of learning, development and growth and the stunting of children's chances to achieve their full potential.

93. Defendants' violation of 42 U.S.C. § 1396a(a)(30)(A) has caused and will cause harm to organizational Plaintiffs in that they have incurred, or will incur, otherwise unnecessary expenditures of organizational resources.

30

94.     Defendants' violation of 42 U.S.C. § 1396a(a)(30)(A) has caused and will cause harm to the members of the organizational Plaintiffs in that they have not received, or will not receive, payments high enough to be consistent with quality of care.

95.     Defendants' violation of 42 U.S.C. § 1396a(a)(30)(A) provides a cause of action to Plaintiffs under 42 U.S.C. § 1983, inasmuch as Defendants, under color of state law, custom, or usage, have deprived, are depriving, and will continue to deprive Plaintiffs of their clearly established rights under 42 U.S.C. § 1396a(a)(30)(A).

96.     The injury to Plaintiffs is irreparable and the Plaintiffs have no adequate remedy at law to prevent the continuing wrong and irreparable injury caused by Defendants' acts or omissions.

### Third Cause of Action
Failure to Ensure HMO Compliance With Federal Requirements

97.     Plaintiffs incorporate the allegations set forth in paragraphs 1 through 78 as though fully set forth herein.

98.     The Social Security Act imposes upon defendants a non-delegable duty to assure that payments to medical providers are consistent with quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area.  42 U.S.C. § 1396a(a)(30)(A).

99.     Where, as in Florida, the state has contracted with health maintenance organizations to provide children's healthcare services, the Social Security Act has added to the state's obligation in 42 U.S.C. § 1396u-2(b)(5), which requires the state to obtain assurances that the HMO offers an appropriate range of services and access to preventive and primary care services for the

population expected to be enrolled and maintain a sufficient number, mix and geographic distribution of providers.  42 U.S.C. § 1396u-2(b)(5).

100.    Defendants have violated this duty by failing to ensure that Florida's HMO contractors offer an appropriate range of services and access to preventive and primary care services for the population expected to be enrolled and maintain a sufficient number, mix and geographic distribution of providers.

101.    Defendants' violation of 42 U.S.C. § 1396u-2(b)(5) has caused and will cause harm to individual Plaintiffs in that they have been, or will be, denied the required healthcare services. The unlawful deprivation of medically necessary care results in the needless infliction of pain, the endangerment of young lives, the disruption of learning, development and growth and the stunting of children's chances to achieve their full potential.

102.    Defendants' violation of 42 U.S.C. § 1396u-2(b)(5) has caused and will cause harm to organizational Plaintiffs in that they have incurred, or will incur, otherwise unnecessary expenditures of organizational resources.

103.    Defendants' violation of 42 U.S.C. § 1396u-2(b)(5) provides a cause of action to Plaintiffs under 42 U.S.C. § 1983, inasmuch as Defendants, under color of state law, custom, or usage, have deprived, are depriving, and will continue to deprive Plaintiffs of their clearly established rights as defined by 42 U.S.C. § 1396u-2(b)(5).

104.    The injury to Plaintiffs is irreparable and the Plaintiffs have no adequate remedy at law to prevent the continuing wrong and irreparable injury caused by Defendants' acts or omissions.

**Fourth Cause of Action**
Denial of Basic Child Healthcare Outreach and Information

105. Plaintiffs incorporate the allegations set forth in paragraphs 1 through 78, as though fully set forth herein.

106. The Social Security Act, 42 U.S.C. § 1396a(a)(43), requires defendants to:

a. Effectively inform Plaintiffs and their adult caretakers of the existence of the Medical Assistance children's healthcare program;

b. Effectively inform Plaintiffs and their adult caretakers about the availability of specific child healthcare services under the Medical Assistance EPSDT program;

c. Effectively inform Plaintiffs and their adult caretakers of health resources and the benefits of preventive care through both oral and written activities that are aggressive and effective;

d. Effectively inform Plaintiffs and their adult caretakers of information in clear and non-technical terms, so that they know what services are available under the Medical Assistance children's healthcare program, where these services are available, and how to obtain them;

e. Effectively inform Plaintiffs and their adult caretakers of the availability of scheduling, assistance to help them obtain children's healthcare services; and

33

f.  Monitor the provision and quality of services and ensure appropriate coordination of services received from different providers, and agencies,

107. In violation of 42 U.S.C. § 1396a(a)(43), Defendants have refused or failed to effectively inform Plaintiffs and their caretakers of the existence of the Medical Assistance children's healthcare program, the availability of specific child healthcare services, and related assistance.

108. Defendants' violation of 42 U.S.C. § 1396a(a)(43) has caused and will cause harm to individual Plaintiffs in that they have been, or will be, denied information about access to children's healthcare services with resulting harm to their mental and physical health. The unlawful deprivation of medically necessary care results in the needless infliction of pain, the endangerment of young lives, the disruption of learning, development and growth and the stunting of children's chances to achieve their full potential.

109. Defendants' violation of 42 U.S.C. § 1396a(a)(43) has caused and will cause harm to organizational Plaintiffs in that they have incurred, or will incur, otherwise unnecessary expenditures of organizational resources.

110. Defendants' violation of 42 U.S.C. § 1396a(a)(43) provides a cause of action to Plaintiffs under 42 U.S.C. § 1983, inasmuch as Defendants, under color of state law, custom, or usage, have deprived, are depriving, and will continue to deprive, Plaintiffs of their clearly established rights under 42 U.S.C. § 1396a(a)(43), as defined by 42 U.S.C. § 1396d(a) and(r).

111. The injury to Plaintiffs is irreparable and the Plaintiffs have no adequate remedy at law to prevent the continuing wrong and irreparable injury caused by Defendants' acts or omissions.

34

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Honorable Court grant the following relief:

a.   Determine that this action may be maintained as a class action on behalf of the class of children under the age of 21 who now, or in the future will, reside in Florida and who are, or will be, eligible under Title XIX of the Social Security Act for EPSDT.

b.   Declare defendants to have violated the children's health care provision of Title XIX of the Social Security Act as aforesaid.

c.   Enter an ordered requiring defendants:

- To promptly furnish to all enrolled and eligible Florida children the continuing and complete children's health care to which they are entitled;

- To provide payments for care and services to health care providers which are sufficient to enlist enough providers so that care and services are available to enrolled and eligible children at least to the extent that such care and services are available to children in the geographic area;

- To assure that health maintenance organizations that participate in Florida's Medical Assistance program have the capacity, and fully and effectively use it, to deliver to all enrolled Florida children with them the timely, continuing and complete health care to which they are entitled;

- To aggressively establish and utilize cooperative arrangement with other child-intensive agencies, to seek out, to inform and to arrange for the

35

timely, complete and continuing children's health care and services to all enrolled and eligible Florida children, as well as to secure enrollment, re-enrollment, extension, maintenance, presumptive eligibility, and ease of reporting to the children, their families and their providers, and to secure transportation, scheduling and case management; and

- To take such actions as are proper and necessary to remedy their violations.

d.     Award plaintiffs reasonable attorneys' fees and costs, as authorized pursuant to 42 U.S.C. § 1988.

e.     Grant such other relief as the Court may judge just and proper.

Dated: November 21, 2005

Respectfully Submitted,

By:  _Stuart H. Singer /CEG_

Stuart H. Singer (Florida Bar No. 377325)
Carl E. Goldfarb (Florida Bar No. 0125891)
Damien J. Marshall (Florida Bar. No. 0191302)
BOIES, SCHILLER & FLEXNER LLP
401 East Los Olas Blvd, Suite 1200
Fort Lauderdale, Florida 33301
Tel. (954) 356-0011
Fax (954) 356-0022
*Attorneys for Plaintiffs*

Of Counsel:
Thomas K. Gihool
James Eiseman, Jr.
PUBLIC INTEREST LAW CENTER
    OF PHILADELPHIA
125 South Ninth Street, Suite 700
Philadelphia, Pennsylvania 19107
Tel.  (215) 627-7100
Fax  (215) 627-3183

Louis W. Bullock
MILLER KEFFER & BULLOCK PC
222 S. Kenosha Ave.
Tulsa, Oklahoma 741120
Tel.  (918) 584-2001
Fax  (918) 743-6689

JS 44  (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Florida Pediatric Society/The Florida Chapter of the American Academy of Pediatrics; Florida Academy of Pediatric Dentistry, Inc.; Ashley Dove, Blanche Spell, Eva Carmona, Amy Torchin, Rita & Les

**(b)** County of Residence of First Listed Plaintiff   Leon
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Stuart H. Singer, Esq. (954) 356-0011
Boies, Schiller & Flexner LLP
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301

## DEFENDANTS

Alan Levine, Luci D. Hadi and M. Rony Fracois, M.D.

County of Residence of First Listed Defendant   Leon
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys (If Known)

**(d)** Check County Where Action Arose: ☒ DADE   ☐ MONROE   ☐ BROWARD   ☐ PALM BEACH   ☐ MARTIN   ☐ ST. LUCIE   ☐ INDIAN RIVER   ☐ OKEECHOBEE   HIGHLANDS

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1   U.S. Government Plaintiff
☒ 3   Federal Question   (U.S. Government Not a Party)
☐ 2   U.S. Government Defendant
☐ 4   Diversity   (Indicate Citizenship of Parties in Item III)

Docket: 05CV 23037 Huck/AMS

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☒ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN   (Place an "X" in One Box Only)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

(Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity).

42 U.S.C. § 1396 et seq. This action is brought to remedy Defendants' violation of Federal Medicaid law.

LENGTH OF TRIAL via 15 days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:

☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions).   JUDGE _____   DOCKET NUMBER _____

DATE   11.21.05

SIGNATURE OF ATTORNEY OF RECORD   Stuart H. Singer/CEG

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____

$250.00   930783

11.21.05

JS 44 Reverse (Rev 11/04)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.**      **(a) Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** County of Residence.  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** Attorneys.  Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**(d)** County Where Action Arose. Check only one County.

**II.**      **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.**      **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**      **Nature of Suit.**  Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**      **Origin.**  Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.**      **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**                    Example:           U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VII.**      **Requested in Complaint.**  Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand.  In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**      **Related Cases.**  This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.