UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 05-23037-CIV-AJ

**FLORIDA PEDIATRIC SOCIETY/
THE FLORIDA CHAPTER OF THE
AMERICAN ACADEMY OF
PEDIATRICS, et al.,**

      Plaintiffs,

v.

**SIMONE MARSTILLER, in her
official capacity as the Secretary for the
STATE OF FLORIDA, AGENCY FOR
HEALTH CARE ADMINISTRATION,
et al.,**

      Defendants.
_____/

## ORDER APPROVING AMENDED SETTLEMENT AGREEMENT

The Individual Plaintiffs,[1] as representatives of the certified class, and the Organizational Plaintiffs[2] (collectively, the "Plaintiffs"), and Defendants, SIMONE MARSTILLER, in her official capacity as the Secretary for the State of Florida, Agency for Health Care Administration, ("AHCA") and JOSEPH LADAPO, M.D., in his official capacity as the Surgeon General of the State of Florida, Department of Health ("DOH," and collectively, the "Defendants"),[3] have

---

[1] The individual named plaintiffs are A.D., as the next friend of K.K.; R.G. and L.G. as the next friends of N.G.; E.W., as the next friend of J.W.; K.V., as the next friend of N.V.; S.B., as the next friend of S.M.; K.S., as the next friend of J.S.; and S.C., as the next friend of L.C.

[2] The organizational plaintiffs are the Florida Pediatric Society/The Florida Chapter of the American Academy of Pediatrics ("FCAAP") and Florida Academy of Pediatric Dentistry, Inc.

[3] By operation of Rule 25(d) of the Federal Rules of Civil Procedure, Secretary Marstiller and Dr. Ladapo are automatically substituted as parties to this action for the previous agency heads of AHCA and DOH respectively. The Secretary of the Florida Department of Children and Families

1

reached an amended settlement agreement in this matter. The Plaintiffs, with the agreement of the Defendants (collectively, the "Parties") have moved for approval of an Amended Settlement Agreement pursuant to Fed. R. Civ. P. 23(e). *See* Dkt 1404 (attaching "Amended Agreement" as Ex. A). Having considered the motion and based on its familiarity with this case from having presided over the action since its inception, including an extended trial, this Court now approves the Amended Settlement Agreement.

## BACKGROUND

### A. The 2016 Settlement Agreement

Following a long trial, this Court's issuance of its findings of Fact and Conclusions of Law, and a court-supervised mediation, the parties entered into a comprehensive settlement agreement in 2016, which provided for a wide variety of steps to be taken by Defendants to improve access to medical and dental care, and to address the issues identified by this Court in its Findings. *See* Dkt. 1404-2. A number of these steps have been fully implemented, such as measures to address the probems of patients being wrongly terminated from the program, the switching of patients among doctors unintentionally, and addresing the assignment of coverage to newly born eligible children. *See* Dkt. 1404 at 2-3.

One of the central provisions of the the 2016 Agreement sought to incentivize pediatricians and specialists treating children on Medicaid through enhanced payments for meeting specified performance metrics, so that such providers would offer prompt access to preventative and other medical and dental care. Thus, the 2016 Agreement established benchmarks for AHCA and specified additional steps that AHCA must take if those benchmarks were not obtained. The objective—shared by plaintiffs and defendants—was for Florida Medicaid to improve its

---

("DCF") was an original defendant in this action. However, DCF had no continuing responsibilities under the Court's jurisdiction after June 30, 2018.

2

performance and meet national norms for access to the medical and dental services, required under Medicaid, to be made available to children with reasonable promptness.

Under the incentive program, eligible physicians who met certain quality of care metrics would be compensated for treating children on Medicaid by being paid at enhanced rates, equivalent to Medicare rates, for relevant services. In the first year, only board-certified pediatricians were eligible for the enhanced payment but soon the enhancement payment opportunity was expanded to include all pediatricians, family physicians, general practitioners, and all pediatric specialists. By June 1, 2019, 41.1% of all pediatricians and 28.3% of all doctors who treated children on Medicaid in Florida were paid at the enhanced rate. The number of qualified providers had risen to 7,620 by the second year of the program, a sharp increase from 2,906 qualified providers in the first year.According to AHCA, as of February 2019, about 68% of children on Medicaid who received a service from a pediatrician or a pediatric specialist were treated by a provider paid at the enhanced rate.

Over the past five years, the parties report that hundreds of millions of additional dollars from efficiencies in the state's Medicaid managed care system have been paid to providers of pediatric care, as incentives to providers to improve access to care. Including the federal match, the amount of money dedicated to paying enhanced rates to physicians treating children on Florida Medicaid increased from about $68 million in the 2017-2018 rate year to $187 million (including funds for children with special needs receiving care through Florida Medicaid' CMS program) in the 2018-2019 rate year.

The 2016 Agreement established a number of metrics, based on annual CMS 416 Rpeorts and Health Effectiveness Data and Information Set (HEDIS) measures, to judge progress on the medical component of the Medicaid program. Under the agreement, AHCA was to meet those

metrics for the medical component of the program by 2019. By the end of calendar year 2019, AHCA had met all but two of the metrics established to determine whether the Medicaid program had made adequate progress. Separately, the Department of Health implemented an at-risk, capitated plan for children with special needs on the CMS-component of Florida Medicaid, and as contemplated in Section IV of the 2016 Agreement, the incentive payment plan was extended to physicians providing care to Florida children on Medicaid though the CMS program.

The 2016 Agreement also established metrics for measuring the progress of the dental component of Florida Medicaid. Because the dental program was lagging significantly behind the national average for the state Medicaid programs, AHCA was given until September 30, 2021, a five-year runway to meet the required metrics.

While AHCA was making progress toward attending the benchmarks set forth in the 2016 Agreement, the COVID pandemic starting in early 2020 and increasing in impact during that year, affected Florida Medicaid just as it affected almost all aspects of society, making it clear that AHCA would not be able to meet the remaining access-to-care metrics, at least for the foreseeable future. At the same time the parties recognized the benefits achieved by the 2016 Agreement and sought to extend the program to at least 2030, and to also allow for termination of this long running case. After extensive negotiations, the parties entered into the Amended Agreement, which this Court is now asked to approve.

### B. The Proposed Amended Settlement Agreement

Under the Amended Agreement, AHCA commits to take certain additional actions specified therein for the benefit of children served by Florida's Medicaid Program. Most importantly, AHCA commits to continue to make enhanced payments to qualifying medical providers at least through 2030. This represents a significant extension of its current commitment.

As for dental care, AHCA has committed to additional funding to pay an enhanced rate to qualified Meicaid dentists under certain procedural codes commonly used for treating children on Medicaid. For those codes, AHCA has committed to paying dentists who meet the qualifying criteria established by the amended settlement plan about 140% of the current Medicaid fee-for-service rates.

## ANALYSIS

### A. The Amended Agreement Easily Meets the Standard for Court Approval

In deciding whether to approve an amended settlement, courts look to see if the settlement is "fair, reasonable, and adequate," the same standard courts apply to evaluating an initial settlement. *See Cohen v. Brown Univ.*, 16 F.4th 935, 953 (1st Cir. 2021) (upholding the district court's determination that the amended settlement agreement was "fair, reasonable, and adequate"); *Olden v. Gardner*, 249 F. App'x 210, 220 (6th Cir. 2008) (concluding the district court did not abuse its discretion in finding amended settlement agreement to be "fair, reasonable, and adequate"); *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, 385 F.3d 386, 389 (3d Cir. 2004) (affirming the district court's approval of the sixth amendment to a class action settlement agreement as "fair, adequate, and reasonable" because it "provide[d] class members with additional rights that did not exist under the original [s]ettlement [a]greement"); *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Ford Motor Co.*, 2009 WL 3757040, at *12 (E.D. Mich., Nov. 9, 2009) ("The same standard applies when considering an amendment to a previously-approved class settlement agreement.").

The Amended Agreement extends the enhanced rate of payment provided under the current agreement to qualified medical providers for seven more years, until 2030, thereby encouraging physicians to continue to participate in Florida Medicaid and promoting improved access to care

for Class members. Equally important, the Amended Agreement for the first time makes enhanced payment rates available to qualifying dental providers.

Those additional benefits—without any offsetting negative changes for the class warrant approving the Amended Agreement. The leaders of the two organizational plaintiffs, FCAAP and FAPD, support the Amended Settlement Agreement, which provides all physicians and dentists the same opportunity to qualify for the enhanced rates, a fact which further weighs in support of approval.

In evaluating a proposed settlement, courts in the Eleventh Circuit also consider what are known as the *Bennett* factors, after the decision in *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). *See, e.g., In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247 (11th Cir. 2021); *Ault v. Walt Disney World Co.*, 692 F.3d 1212 (11th Cir. 2012). The *Bennett* factors also militate strongly in favor of approval of the amended settlement. As for the first through third factors, "[t]he likelihood of success at trial," "the range of possible recovery," and "the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable," it is unlikely that the class could achieve greater success or a higher level of recovery by resuming adversarial litigation. As for the fourth factor, "the complexity, expense and duration of litigation," additional litigation would be costly, expensive, and protracted, all of which would be prejudicial to the Class and weigh in favor of approving the amended agreement. As for the fifth factor, "the substance and amount of opposition to the settlement," it is unlikely any class members would object (as noted the leadership of the two organizational plaintiffs have endorsed the Amended Settlement Agreement). And as for the final factor -- the "stage of proceedings at whih the settlement was achieved, " the Parties have arrived at the Amended Agreement after a decade of litigation

including a 93-day trial, and another six years of settlement-monitoring. Thus, all of the *Bennett* factors support approval of the amended Settlement Agreement as being in the best interests of the Class and this court so finds.

### B. New Notice Is Not Required Before Approval of the Amended Agreement

Federal Rule of Civil Procedure 23(e)(1)(A) requires "[t]he parties [to] provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Rule 23 does not require new notice to class when the changes in an amended settlement, as is the case here, are not detrimental to the class. Courts routinely hold that no new notice is required when changes to a proposed settlement are objectively favorable for class members and do not prejudice any benefit previously promised. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 330 (N.D. Cal. 2018) (Koh, J.) (collecting cases). *See also Shaffer v. Cont'l Cas. Co.*, 362 F. App'x 627, 631 (9th Cir. 2010) ("Although changes were made to the release after potential class members received the notice, the changes did not render the notice inadequate because they narrowed the scope of the release."); *Keepseagle v. Vilsack*, 102 F. Supp. 3d 306, 313 (D.D.C. 2015) ("[C]ourts generally find that Rule 23(e) applies to a modification of a previously approved settlement only when the settlement will be 'materially alter[ed].' Phrased more specifically, an amendment requires supplemental notice only when it 'would have a material adverse effect on the rights of class members.'") (internal citations omitted).

Because the changes in the settlement are beneficial to class members, the Court finds no additional notice to the class is required.

### CONCLUSION

The Court has determined that the Amended Settlement Agreement is in the interest of the Class, does not require additional notice, and approves the Amended Settement Agreement.

7

Consistent with the request of the parties, the Court also closes this case. *See* Amended Settlement Agreement, 1404-1 at 2.

**DONE and ORDERED** in Chambers, Miami, Florida, this 3rd day of November, 2022.

*[signature]*

**HONORABLE ADALBERTO JORDAN**
**UNITED STATES DISTRICT JUDGE,**
**SITTING BY DESIGNATION**

cc: Counsel of Record